IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COMMONWEALTH RESEARCH GROUP LLC, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 11-655-RGA |
| LATTICE SEMICONDUCTOR CORPORATION, et al., | : |
| Defendants. | : |

**MEMORANDUM OPINION**

Richard K. Herrmann, Esq., Morris James LLP, Wilmington, Delaware; Attorney for Plaintiff.

Thomas L. Halkowski, Esq., Fish & Richardson, P.C.; Attorney for Defendant.

June 28, 2012
Wilmington, Delaware

*/s/ Richard G. Andrews*

ANDREWS, UNITED STATES DISTRICT JUDGE:

Before the Court is Defendant Cypress Semiconductor's Motion for Attorney Fees. (D.I. 114). The motion is premised upon the claim that this is an exceptional case. 35 U.S.C. § 285.

The Plaintiff, Commonwealth Research Group, owns a patent which is captioned, "System for Conserving Energy among Electrical Components." Plaintiff sued about 22 companies (some of which were related to each other) in the District of Delaware in *Commonwealth Research Group v. NXP Semiconductors USA Inc.*, No. 10-206-PD, alleging infringement of that patent. There was little litigation in that case, as the parties quickly settled, with the Plaintiff obtaining modest payments from the defendants. (D.I. 122, Exh. A). As the last of those defendants settled, the Plaintiff filed the instant suit on July 26, 2011, against 13 defendants, alleging infringement of the same patent. Most defendants in this case quickly settled too, but four defendants (including Zilog and Cypress) did not. The Court considered an early motion for summary judgment by Zilog, on the basis of indefiniteness, which was argued, mostly by Zilog rather than Cypress, on March 2, 2012, and denied on March 8, 2012. (D.I. 91). In mid-March there were discussions between Cypress and the Plaintiff about resolving the case. (D.I. 122, ¶ 13). At about the same time, on March 16, 2012, the Plaintiff, Zilog, and Cypress filed a Joint Claim Construction Chart. On April 2, the parties filed Opening Claim Construction Briefs. (D.I. 99, 100). Plaintiff's opening brief might be charitably described as a very modest effort. On an unspecified date in early April, Plaintiff's counsel left a voice mail for Cypress' counsel, the response to which, on April 9, 2012, was, "Cypress would be willing to accept a dismissal with prejudice." (D.I. 122, Exh. B). The case was not dismissed, however, as discussion continued on important collateral issues. On April 24, Plaintiff and Zilog stipulated

to a dismissal.[1] On May 1, Plaintiff filed a motion to dismiss with prejudice (D.I. 108), and the next day Cypress filed an Answering Brief on Claim Construction. (D.I. 112).

Cypress consistently asserted to the Plaintiff that: (1) the patent had some serious validity issues relating to prior art; (2) Cypress did not infringe the patent; and (3) Cypress would pay nothing unless it thought it was possible that it would have some liability. (*See generally* D.I. 118, 131). Cypress did not, however, provide the prior art to the Plaintiff (D.I. 122, ¶ 11), and has not provided it in this motion. Cypress also did not provide its non-infringement theory to Plaintiff (*Id.*, ¶ 20), but has set it forth in the briefing on the motion. Cypress relies upon an infringement chart that Plaintiff's counsel provided to Cypress' General Counsel in about August 2011. (*Id.*, ¶¶ 8-9). According to Cypress, a reasonable investigation into its accused infringing product would have shown that it did not meet one (or more) of the claim limitations of the patent.

Plaintiff describes its pre-suit investigation, including its analyses of the patent and Cypress' accused products. This investigation included having a "detailed infringement analysis" performed by Commonwealth's in-house attorney, a former Patent Examiner with some previous semiconductor experience. (D.I. 123). His analysis included consulting with another former Patent Examiner with experience in computer chip design. Plaintiff submitted another declaration from a technical expert with a master of science in electrical engineering, and, although his declaration says he was retained before any suit was filed, he does not say when he

---

[1] Cypress asserts in its brief that the settlement was for $5,000 (D.I. 129, at p.1), but does not cite to the record for that figure. Zilog's counsel submitted a declaration that described the settlement as "a small nuisance payment," but without providing an actual dollar value. (D.I. 133, ¶ 8),

3

performed the analysis that is in his declaration. (D.I. 124). Plaintiff does not concede that its infringement theory is without merit.

Plaintiff explains its conduct as being based on a belief that it had a viable case until the summary judgment argument on March 2, 2012. Essentially, even though I was not convinced by the indefiniteness argument, it apparently made a much bigger impact on Plaintiff's counsel. There was thus a period of at most two weeks between Plaintiff's realization that its case was in serious trouble and the start of the discussion with Cypress' outside counsel, initiated by Plaintiff,[2] of resolving the case against Cypress, which quickly involved, at a minimum, dismissing it with prejudice. (D.I. 122, ¶¶ 13-14). That the case was not then quickly resolved was due, at least in part, to Cypress' requests that it receive some compensation for the defense of the suit.

Thus, the overall picture that is presented is that the Plaintiff's strategy was to file suits against a large number of defendants, and, due to the huge expenses inherent in patent litigation,[3] force nuisance value settlements. Against this backdrop, though, Cypress' argument is much narrower. Cypress argues that the case is exceptional for two reasons: (1) Plaintiff's infringement investigation was insufficient; and (2) Plaintiff should not have made Cypress do any claim construction in the March/April period.

The parties agree that the relevant standard for this motion is that the Defendant's motion

---

[2] Cypress' General Counsel states that on March 14, Plaintiff's counsel implied to her that the case could be resolved for between $35,000 and $50,000. (D.I. 118, ¶ 14).

[3] Cypress asserts that its attorney's fees as of the end of April were "less than $250,000." (D.I. 115, at 18 n.14). I would interpret this to mean at that point in time the attorney's fees were just under $250,000. And the meter did not stop running then.

4

should only be granted if the Defendant shows that "(1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 543-44 (Fed. Cir. 2011). The showing needs to be by clear and convincing evidence. *See Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003). While I suspect that the litigation may be objectively baseless, I cannot so conclude, at least in part due to the termination of this case before a deposition was taken, before the completion of claim construction briefing, before the holding of a *Markman* hearing, and before any actual claim construction by me.[4] At one point, Cypress wanted to hold the *Markman* hearing notwithstanding that Plaintiff had moved to dismiss its claims with prejudice. (D.I. 111: "Cypress remains prepared to participate in the claim construction hearing on May 29th, present expert testimony from Professor Dean Neikirk, and explain the lack of merit regarding [Commonwealth's] claim construction positions as well as its patent generally."). I postponed the *Markman* hearing, and the request to have that hearing has not been renewed, although, to be fair, Cypress certainly indicated its willingness to have one. (*See* D.I. 119). I do not think having such a hearing would make sense. *See Am. Tech. Inc. v. Am. Future Tech. Corp.*, 2012 WL 859345, *4 (M.D. Fla. Mar. 14, 2012).

In my opinion, Cypress has not proved that the litigation was brought in subjective bad faith. Cypress went through the steps that a reasonable company contemplating bringing a patent suit would go through. It had qualified people examine the patent, the defendant's

---

[4] There was also virtually no other discovery done in the case. (*See* D.I. 76, 89, 90, 96, 107). Thus, the record before me on this motion (other than Plaintiff's Opening Claim Construction Brief) is not so much the record in this case, but rather the record created for this motion.

product, and produce an infringement chart.[5] What it did not do was to "reverse engineer" the accused product. I am not sure whether such reverse engineering would have made its suit any more or less meritorious in its eyes.[6] I do not think that doing reverse engineering is required, even if, as Cypress asserts, its product could have easily been purchased for $100. *See Q-Pharma, Inc. v. Andrew Jergens Co.,* 360 F.3d 1295, 1302 (Fed. Cir. 2004) (Rule 11)("our case law makes clear that the key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis.").

What seems to have dealt the "death blow" to the Plaintiff's case was the indefiniteness argument, which seems to have come into focus for the Plaintiff (if not for me) at the oral argument on March 2, 2012. Fairly promptly after that, Plaintiff wanted to "walk away" from the lawsuit. As Plaintiff points out, one might easily interpret that as a sign of good faith, and I think it undercuts Cypress' argument for bad faith. The Plaintiff's claim construction briefing, while substandard, was filed at about the same time as it was indicating its willingness to have its case dismissed with prejudice, and it is understandable, if not excusable, that the brief shows little effort. Under the circumstances, I do not think the briefing is a basis for finding "subjective bad faith."

Thus, I do not find that Cypress has shown, by either of its arguments, "subjective bad faith," and I will deny Cypress' motion.

---

[5] Outside counsel's role in the pre-suit investigation is cursorily described. "Along with other members of my law firm, I consulted with [inside counsel] in conducting infringement analysis of the [patent]." (D.I. 122, ¶ 7).

[6] I say this because, assuming reverse engineering would have revealed exactly what Cypress says it would have revealed, Plaintiff's arguments as to why Cypress' products infringed would remain.

6